| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RANDALL P. MROCZYNSKI (SBN 156784)<br>rmroczynski@cookseylaw.com<br>COOKSEY,TOOLEN, GAGE, DUFFY & WOOG<br>535 Anton Boulevard, 10th Floor<br>Costa Mesa, CA 92626<br>(714) 431-1100; FAX:  (714) 431-1145 | |

☐ *Individual appearing without attorney*
☒ *Attorney for:* Movant

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| In re:<br><br>Farshad Fasihi Harandi | CASE NO.:  9:19-bk-10449-DS<br><br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** |
| Debtor(s). | DATE: 05/27/2020<br>TIME: 11:30 am<br>COURTROOM: 201 |

**Movant:** Daimler Trust

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012        ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☒ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c. ☐ An application for order setting hearing on shortened notice and remains pending. After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  04/17/2020

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
_____
Printed name of law firm (if applicable)

RANDALL P. MROCZYNSKI
_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 2                    **F 4001-1.RFS.PP.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

2. **The Property at Issue (Property):**

   a. ☒ Vehicle (*year, manufacturer, type, and model*): 2017 Mercedes-Benz GLS450W4

   *Vehicle Identification Number:* 4JGDF6EE4HA942951
   *Location of vehicle (if known):* In Debtor's Possession

   b. ☐ Equipment (*manufacturer, type, and characteristics*):

   *Serial number(s):*

   *Location (if known):*

   c. ☐ Other Personal Property (*type, identifying information, and location*):

3. **Bankruptcy Case History:**

   a. ☒ A voluntary bankruptcy petition ☐ An involuntary bankruptcy petition
   under chapter ☐ 7 ☒ 11 ☐ 12 ☐ 13 was filed on (*date*) 03/14/2019 .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) _____.

   c. ☐ Plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

       (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant
   sufficient to protect Movant's interest against that decline.

       (C) ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's
   obligation to insure the collateral under the terms of Movant's contract with Debtor.

       (D) ☐ Other (*see attached continuation page*).

   (2) ☐ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case
   commencement documents.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 3                    **F 4001-1.RFS.PP.MOTION**

(B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D) ☐ Other bankruptcy cases were filed in which an interest in the Property was asserted.

(E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(3) ☐ (*Chapter 12 or 13 cases only*)  All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due ☐ postpetition preconfirmation ☐ postpetition postconfirmation.

(4) ☐ The lease has matured, been rejected or deemed rejected by operation of law.

(5) ☐ The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

(6) ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(7) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

5. **Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

c. ☐ Other (*specify*):

6. ☒ **Evidence in Support of Motion: *(Declaration(s) must be signed under penalty of perjury and attached to this motion)***

a. The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s) _____.

d. ☐ Other:

7. **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 4                                    **F 4001-1.RFS.PP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3.  ☐ Confirmation that there is no stay in effect.

4.  ☐ The stay is annulled retroactive to the petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5.  ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7.  ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8.  ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9.  ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ If relief from stay is not granted, the court orders adequate protection.

12. ☒ ~~See continuation page for~~ other relief requested - That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

Date:  04/17/2020

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
Print name of law firm

RANDALL P. MROCZYNSKI
Print name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 5                    **F 4001-1.RFS.PP.MOTION**

# PERSONAL PROPERTY DECLARATION

I, (*name of declarant*) _____ *Monica Senter* _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property (*specify*):

   a. ☐ I am the Movant.

   b. ☒ I am employed by Movant as (*title and capacity*): Bankruptcy Specialist

   c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (see attached):

3. The Property is:

   a. ☒ Vehicle (*year, manufacturer, type, model and year*): 2017 Mercedes-Benz GLS450W4

      *Vehicle Identification Number:* 4JGDF6EE4HA942951
      *Location of vehicle (if known):* In Debtor's Possession

   b. ☐ Equipment (*manufacturer, type, and characteristics*):

      *Serial number(s):*
      *Location (if known):*

   c. ☐ Other personal property (*type, identifying information, and location*):

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                     Page 6                     **F 4001-1.RFS.PP.MOTION**

4.  The nature of Debtor's interest in the Property is:

   a.  ☐  Sole owner

   b.  ☐  Co-owner (*specify*):

   c.  ☒  Lessee

   d.  ☐  Other (*specify*):

   e.  ☒  Debtor ☒ did ☐ did not   list the Property in the schedules filed in this case.

5.  ☐  The lease matured or was rejected on (*date*) _____:

   a.  ☐  rejected

      (1)  ☐  by operation of law.

      (2)  ☐  by order of the court.

   b.  ☐  matured.

6.  Movant has a perfected security interest in the Property.

   a.  ☐  A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor to Movant is attached as Exhibit _____.

   b.  ☒  The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for by state law.  True and correct copies of the following items are attached to this motion:

      (1)  ☒  Certificate of title ("pink slip") (Exhibit _"A"_____).

      (2)  ☒  Vehicle or other lease agreement (Exhibit _"B"_____).

      (3)  ☐  Security agreement (Exhibit _____).

      (4)  ☐  Other evidence of a security interest (Exhibit _____).

   c.  ☐  The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided for by state law.  True and correct copies of the following items are attached to this motion:

      (1)  ☐  Security agreement (Exhibit _____).

      (2)  ☐  UCC-1 financing statement (Exhibit _____).

      (3)  ☐  UCC financing statement search results (Exhibit _____).

      (4)  ☐  Recorded or filed leases (Exhibit _____).

      (5)  ☐  Other evidence of perfection of a security interest (Exhibit _____).

   d.  ☐  The Property is consumer goods.  True and correct copies of the following items are attached to this motion:

      (1)  ☐  Credit application (Exhibit _____).

      (2)  ☐  Purchase agreement (Exhibit _____).

      (3)  ☐  Account statement showing payments made and balance due (Exhibit _____).

      (4)  ☐  Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

   e.  ☐  Other liens against the Property are attached as Exhibit _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 7                            **F 4001-1.RFS.PP.MOTION**

7. Status of Movant's debt:

   a. The amount of the monthly payment: $ _1,040.38_____ .

   b. Number of payments that became due and were not tendered: ☐ prepetition ☒ postpetition.   [3]

   c. Total amount in arrears: $ _3,121.14_____ .

   d. Last payment received on (*date*): _03/04/2020_ (Applied to 01/01/20 Payment)

   e. Future payments due by the anticipated hearing date (*if applicable*): _05/01/2020___
      An additional payment of $ _1040.38_____ will come due on (*date*) _05/01/2020_ , and on
      the _1st_____ day of each month thereafter. If the payment is not received by the _N/A_____
      day of the month, a late charge of $ _____N/A_____ will be charged under the terms of the loan.

8. ☒ Attached as Exhibit _"D"___ is a true and correct copy of a POSTPETITION payment history that accurately
   reflects the dates and amounts of all payments made by the Debtor since the petition date.

9. Amount of Movant's debt:

   a. Principal:............................................................................................. $ _49,606.03_____
   b. Accrued interest: ................................................................................. $ _____
   c. Costs (attorney's fees, late charges, other costs):................................ $ _____
   d. Advances (property taxes, insurance): .................................................. $ _____
   e. TOTAL CLAIM as of _04/09/2020_ :....................................................... $ _49,606.03_____

10. ☒ (*Chapter 7 and 11 cases only*) Valuation: The fair market value of the Property is: $ _38,400.00_____ .
    This valuation is based upon the following supporting evidence:

    a. ☒ This is the value stated for property of this year, make, model, and general features in the reference guide
       most commonly used source for valuation data used by Movant in the ordinary course of its business for
       determining the value of this type of property. True and correct copies of the relevant excerpts of the most
       recent edition of the reference guide are attached as Exhibit _"C"___ .

    b. ☐ This is the value determined by an appraisal or other expert evaluation. True and correct copies of the
       expert's report and/or declaration are attached as Exhibit _____ .

    c. ☐ The Debtor's admissions in the Debtor's schedules filed in the case. True and correct copies of the relevant
       portions of the Debtor's schedules are attached as Exhibit _____ .

    d. ☐ Other basis for valuation (*specify*):

    +------------------------------------------------------------------------------------+
    | **NOTE:** If valuation is contested, supplemental declarations providing additional foundation for the |
    | opinions of value should be submitted.                                             |
    +------------------------------------------------------------------------------------+

11. Calculation of equity in Property:

    a. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**

       I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s)
       senior to Movant's debt is $ _0_____ and is _0____% of the fair market value of the
       Property.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 8                              F 4001-1.RFS.PP.MOTION

b. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ 0                                    .

12. ☒ The fair market value of the Property is declining because:

Debtor's use and aging of Vehicle.

13. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

14. ☐ Movant regained possession of the Property on (date) _____, which is: ☐ prepetition ☐ postpetition.

15. ☐ (Chapter 12 or 13 cases only) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (date) _____
A plan confirmation hearing is currently scheduled for (or concluded on) (date) _____
The plan was confirmed on (if applicable) (date) _____

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postconfirmation payments due BUT REMAINING UNPAID after the plan confirmation date (if applicable):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
(For details of type and amount, see Exhibit _____)

e. Attorneys' fees and costs:                                                          $
(For details of type and amount, see Exhibit _____)

f. Less suspense account or partial paid balance:                          $ [                    ]

TOTAL POSTPETITION DELINQUENCY:          $

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 9                                    **F 4001-1.RFS.PP.MOTION**

g. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____.  See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16. ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (*specify*):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property:

(1) Case name: _____

Chapter: _____    Case number: _____

Date filed: _____    Date discharged: _____    Date dismissed: _____

Relief from stay regarding the Property ☐ was  ☐ was not  granted.

(2) Case name: _____

Chapter: _____    Case number: _____

Date filed: _____    Date discharged: _____    Date dismissed: _____

Relief from stay regarding the Property ☐ was  ☐ was not  granted.

(3) Case name: _____

Chapter: _____    Case number: _____

Date filed: _____    Date discharged: _____    Date dismissed: _____

Relief from stay regarding the Property ☐ was  ☐ was not  granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 10                                    **F 4001-1.RFS.PP.MOTION**

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/15/2020 | _Monica Senter_ | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                              Page 11                              F 4001-1.RFS.PP.MOTION

# Exhibit "A"

Mercedes-Benz Financial Services

**CALIFORNIA**
**MOTOR VEHICLE LEASE AGREEMENT**

The First Class Lease'

### Dates

The date of this lease is **06/24/2017**

The scheduled term of this lease is **36** months ("Lease Term").

The scheduled date this lease ends is **06/24/2020** ("Lease End").

### Parties

Lessor (Dealer) **SILVER STAR AG LTD**

Address: **3905 AUTO MALL DRIVE**
**THOUSAND OAKS, CA 91362**

Lessee: **FARSHAD HARANDI**

Lessee's Billing Address: **26000 PACIFIC COAST HWY #5**
**MALIBU CA 90265**

House County: **LOS ANGELES**

### Type of Lease

☒ Standard Lease    ☐ Single Payment Lease

If the Single Payment Lease box is checked above, "Monthly Payment", "Monthly Payments" or "First Monthly Payment" are replaced with the words "Single Lease Payment" throughout this lease and the word "Monthly" in section 6.j. below is deleted.

### Vehicle Information

☒ New    ☐ Pre-owned    VIN  **4JGDF6EE4HA942951**

**2017  MERCEDES-  GLS450W4  UT  60**
Year    Make    Model    Body Style    Odometer Reading

Primary Intended Use

☐ Personal    ☐ Business, Commercial, or Agricultural Purposes

If no box is checked, or if the Personal box is checked, you agree to use the vehicle for personal, family or household purposes.

---

Unless otherwise specified, "lease" refers to this Motor Vehicle Lease Agreement, "vehicle" refers to the vehicle described above, "you", "your", and "yours" refer to the Lessee and any Co-Lessee; "we", "us", and "our" refer to the Lessor and, after the lease is assigned, to DAIMLER TRUST, or its successors and assigns; "assignee" refers to DAIMLER TRUST or its successors and assigns. The "Vehicle Turn-In Fee" is a fee to cover the cost of disposing of the vehicle, commonly referred to as a disposition fee. "Pre-owned" refers to used vehicles. You agree to lease the vehicle from us on the terms and conditions provided for in this lease. The terms and conditions contained in this lease are made on behalf of Lessor and Assignee.

---

### Consumer Leasing Act Disclosures

| **1. Amount Due at Lease Signing or Delivery** | **2. Monthly Payments** | **3. Other Charges** (not part of your Monthly Payment) | **4. Total of Payments** (The amount you will have paid by the end of the lease) |
|---|---|---|---|
| (Itemized below) | Your first Monthly Payment of **1033.26** is due on **06/24/2017**, followed by **35** payments of **1033.26** due the **24TH** of each month. The total of your Monthly Payments is **37197.36**. | a. Vehicle Turn-In Fee (if you do not purchase the vehicle at Lease End) **595.00**   N/A | |
| **1756.01** | | b. N/A   N/A | |
| | | c. Total **595.00**   N/A | **38515.11** |

### 5. Itemization of Amount Due at Lease Signing or Delivery

**a. Amount Due at Lease Signing or Delivery:**

| | |
|---|---|
| 1. First Base Monthly Payment (includes sales/use taxes) | $ **1033.26** |
| 2. Capitalized Cost Reduction | $ **N/A** |
| 3. Acquisition Fee (if not capitalized) | $ **N/A** |
| 4. Sales/Use Taxes | $ **7.00** |
| 5. Refundable Security Deposit | $ **N/A** |
| 6. Registration/Titling Fees | $ **112.00** |
| 7. License Fees | $ **486.00** |
| 8. Document Processing Fee (not a government fee) | $ **80.00** |
| 9. Electronic Filing Fee (not a government fee) | $ **29.00** |
| 10. California Tire Fees | $ **8.75** |
| 11. N/A | $ **N/A** |
| 12. N/A | $ **N/A** |
| 13. N/A | $ **N/A** |
| 14. Total | $ **1756.01** |

**b. How the Amount Due at Lease Signing or Delivery will be paid:**

| | |
|---|---|
| 1. Net Trade-in Allowance | $ **0.00** |
| 2. Rebates and Noncash Credits | $ **1756.01** |
| 3. Amount to be Paid in Cash | $ **N/A** |
| 4. N/A | $ **N/A** |
| 5. Total | $ **1756.01** |

### 6. Your monthly payment is determined as shown below:

| | |
|---|---|
| a. **Gross Capitalized Cost**: The agreed upon value of the vehicle ($ **74684.52** ) and any items you pay over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) | $ **75679.52** |
| b. **Capitalized Cost Reduction**: The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost | – $ **N/A** |
| c. **Adjusted Capitalized Cost**: The amount used in calculating your Base Monthly Payment | = $ **75679.52** |
| d. **Residual Value**: The value of the vehicle at the end of the lease used in calculating your Base Monthly Payment | – $ **44548.00** |
| e. **Depreciation and any amortized amounts**: The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term | = $ **31131.52** |
| f. **Rent Charge**: The amount charged in addition to the Depreciation and any amortized amounts | + $ **3072.80** |
| g. **Total of Base Monthly Payments**: The Depreciation and any amortized amounts plus the Rent Charge | = $ **34204.32** |
| h. **Lease Payments**: The number of payments in your lease | 36 |
| i. **Base Monthly Payment** | = $ **950.12** |
| j. **Monthly Sales/Use Taxes** | + $ **83.14** |
| l. **Total Monthly Payment** | = $ **1033.26** |

### 7. Early Termination.
You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

### 8. Excessive Wear and Use.
You may be charged for excessive wear based on our standards for normal use and for mileage in excess of **36,000** miles ("Mileage Allowance") for the term of this lease, at the rate of **.25** per mile.

### 9. Purchase Option at End of Lease Term.
You have an option to purchase the vehicle ("as is") at the end of the lease term for $ **44548.00**, plus a Purchase Option Fee of $ **150.00**, plus all official fees and taxes. See the Purchase Option section on the back of this lease for more information.

### 10. Other Important Terms.
See your lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

### 11. Itemization of Gross Capitalized Cost

| | |
|---|---|
| Agreed upon value of vehicle as equipped at the time of Lease signing | $ **74684.52** |
| Accessories and optional equipment Lessor agrees to add to the vehicle after lease signing: | |
| (Describe) **N/A** | $ **N/A** |
| (Describe) **N/A** | $ **N/A** |
| (Describe) **N/A** | $ **N/A** |
| (Describe) **N/A** | $ **N/A** |
| (Describe) **N/A** | $ **N/A** |
| Total agreed upon value of vehicle | $ **74684.52** |
| Other amounts included in the Gross Capitalized Cost: | |
| Acquisition Fee (if capitalized) | $ **995.00** |
| Sales/Use Tax | $ **N/A** |
| License Fees | $ **N/A** |
| Registration/Titling Fees | $ **N/A** |
| California Tire Fees | $ **N/A** |
| Document Processing Fee (not a government fee) | $ **N/A** |
| Outstanding Prior Credit or Lease Balance on Trade-in Vehicle included in Gross Capitalized Cost | $ **N/A** |
| Electronic Filing Fee (not a government fee) | $ **N/A** |
| Optional Products and Services: | |
| Credit Life Insurance Premium | $ **N/A** |
| Credit Disability Insurance Premium | $ **N/A** |
| Charge for Service Contract | $ **N/A** |
| Charge for Maintenance Agreement | $ **N/A** |
| (Describe) **N/A** | $ **N/A** |
| (Describe) **N/A** | $ **N/A** |
| (Describe) **N/A** | $ **N/A** |
| Other: | |
| (Describe) **N/A** | $ **N/A** |
| (Describe) **N/A** | $ **N/A** |
| **Total Gross Capitalized Cost** | $ **75679.52** |

### 12. Estimated Official Fees and Taxes
The total estimated amount you will pay for official fees, license, title and registration fees, and taxes over the term of your lease, whether included in your Monthly Payment or assessed otherwise is $ **4802.79**. This is an estimate and the actual total of Official Fees and Taxes may be higher or lower than this estimate. The actual total of Official Fees and Taxes relates in the values in effect, the value of the vehicle and the garage location of the vehicle at the time the fees and taxes are assessed.

### 13. Mileage Allowance
The odometer reading in the Vehicle Information section of this lease provides the

### 14. Missing Records
If you do not return the vehicle's maintenance booklets as provided in the Maintenance section of this lease, you will owe a missing records fee in the amount of $ _____.

### 15. New and Pre-owned Vehicle Warranty
If the vehicle is new, it is covered by a standard new vehicle warranty from the manufacturer.

If the vehicle is pre-owned, it is not covered by a warranty unless indicated by a check in the corresponding box below:

☐ Remainder of standard new vehicle warranty from manufacturer

☐ Pre-owned vehicle warranty from manufacturer

☐ Pre-owned warranty from other third-party provider

Unless you sign off if you have waived any of these warranties. You acknowledge that you have received a copy of the indicated warranties.

**We lease the vehicle to you "AS IS", EXCEPT AS EXPRESSLY PROVIDED IN THIS LEASE, AND UNLESS PROHIBITED BY LAW, WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VEHICLE'S OR ANY PART OR ACCESSORY THEREOF, CONDITION, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE AND WE MAKE NO OTHER REPRESENTATION OR WARRANTY WHATSOEVER.**

### 16. Optional Insurance and Other Products
You are not required to buy any of the optional insurance or other products listed below to obtain this lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless you are accepted by the provider. By your initials below, you agree that you have received a notice of the terms and cost of the insurance or product, and you want to obtain this insurance or product for the amount or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer). These coverages are not provided by the Lessor. You must purchase all matters related to these coverages, including rebates, through the provider. The terms and conditions for these coverages are provided in a separate contract, which you acknowledge that you have received and read.

If the price of these coverages is also included in the itemization of Gross Capitalized Cost, it will be included in the Base Monthly Payments. If not, you have paid for the coverages in full upon signing this lease.

Unless you receive written notification otherwise, credit life and credit disability coverage are not in effect until the last payment due under this lease.

| | | | |
|---|---|---|---|
| ☐ Credit Life Provider | N/A | | |
| Initial Coverage $ | N/A | Prem $ | N/A |
| Lessee/Co-Lessee Initials | N/A | | |
| ☐ Credit Disability Provider | N/A | | |
| Maximum No. Benefit $ | N/A | Prem $ | N/A |
| Lessee/Co-Lessee Initials | N/A | | |

Exhibit **A**

Page **1** of **5**

Accessories and optional equipment Lessee agrees to
add to the vehicle after lease signing:

| (Describe) | N/A | $ | N/A |
|---|---|---|---|
| (Describe) | N/A | $ | N/A |
| (Describe) | N/A | $ | N/A |
| (Describe) | N/A | $ | N/A |

Total agreed upon value of vehicle .............. $ 74684.52

**Other Amounts Paid in your Gross Capitalized Cost:**

| Acquisition Fee (if capitalized) ......... | $ | 995.00 |
|---|---|---|
| Sales/Use Tax ........................ | $ | N/A |
| License Fees ......................... | $ | N/A |
| Registration/Titling Fees ............ | $ | N/A |
| California Tire Fees .................. | $ | N/A |
| Document Processing Fee (if applicable) .. | $ | N/A |
| Outstanding Prior Credit or Lease Balance on Trade-in Vehicle included in Gross Capitalized Cost ... | $ | N/A |
| Electronic Filing Fee (plus a government fee) ... | $ | N/A |

**Optional Products and Services:**

| Credit Life Insurance Premium ......... | $ | N/A |
|---|---|---|
| Credit Disability Insurance Premium .... | $ | N/A |
| Charge for Service Contract .......... | $ | N/A |
| Charge for Maintenance Agreement ..... | $ | N/A |
| (Describe) N/A | $ | N/A |
| (Describe) N/A | $ | N/A |
| (Describe) N/A | $ | N/A |

**Other:**

| (Describe) N/A | $ | N/A |
|---|---|---|
| (Describe) N/A | $ | N/A |

Total Gross Capitalized Cost ............... $ 75679.52

**12. Estimated Official Fees and Taxes**

The total estimated amount you will pay for official fees, license, title and registration fees, and taxes over the term of your lease, whether included with your Monthly Payment or assessed otherwise is $ _4802.79_. This is an estimate and the actual total of Official Fees and Taxes may be higher or lower than this estimate. The actual total of Official Fees and Taxes depends on the sales in effect, the value of the vehicle and the garage location of the vehicle at the time the fees and taxes are assessed.

**13. Mileage Allowance**

The odometer reading in the Vehicle Information section of this lease provides the number of miles existing on the vehicle when you entered this lease ("Existing Miles"). Your Mileage Allowance provided in section 8 refers to miles driven during the Lease Term and does not include the Existing Miles.

If your Mileage Allowance in section 8 above is greater than _36,000_ (the "Base Mileage Amount"), you have chosen to purchase additional miles for your Mileage Allowance determination. If you have purchased additional miles, then at Lease End, except as provided below, you will be eligible for a credit or refund of $ _.20_ per mile for any unused additional miles between the Base Mileage Amount and your Mileage Allowance over the term of the lease. You will not receive a refund if the vehicle is destroyed or stolen, you are in default, you purchase the vehicle, or the refund is less than $1.

**15. New and Pre-owned Vehicle Warranty**

If the vehicle is new, it is covered by a standard new vehicle warranty from the manufacturer.

If the vehicle is pre-owned, it is not covered by a warranty unless indicated by a check in the corresponding box below:

- [ ] Remainder of standard new vehicle warranty from manufacturer
- [ ] Pre-owned vehicle warranty from manufacturer
- [ ] Pre-owned warranty from other third-party provider

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties.

**We lease the vehicle to you "AS IS", EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE, AND UNLESS PROHIBITED BY LAW, WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VEHICLE'S (OR ANY PART OF ACCESSORY THEREOF) CONDITION, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE AND WE MAKE NO OTHER REPRESENTATION OR WARRANTY WHATSOEVER.**

**16. Optional Insurance and Other Products**

You are not required to buy any of the optional insurance or other products listed below to enter into this lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless you are accepted by the provider. By your initials below, you agree that you have received a notice of the terms and cost of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer). These coverages are not provided by the Lessor. You must pursue all matters related to these coverages, including refunds, through the provider. The terms and conditions for these coverages are provided in a separate contract, which you acknowledge that you have received and read.

If the price of these coverages is also included in the itemization of Gross Capitalized Cost, it will be included in the Base Monthly Payments. If not, you have paid for the coverages in full upon signing this lease.

Unless you receive written notification otherwise, credit life and credit disability insurance end on the original due date of the last payment due under this lease.

| Credit Life Provider | N/A | | |
|---|---|---|---|
| Initial Coverage is $ | N/A | Prem $ | N/A |
| Lessee/Co-Lessee Initials | N/A | | |
| Credit Disability Provider | N/A | | |
| Maximum Mo. Benefit $ | N/A | Prem $ | N/A |
| Lessee/Co-Lessee Initials | N/A | | |
| Service Agreement Provider | N/A | | |
| Coverage is for | N/A | months or | miles, whichever happens first. |
| Premium or charge $ | N/A | Lessee/Co-Lessee Initials | N/A |
| Extended Warranty Provider | N/A | | |
| Coverage is for | N/A | months or | miles, whichever happens first. |
| Premium or charge $ | N/A | Lessee/Co-Lessee Initials | N/A |

**Additional Disclosures**

| DESCRIPTION OF TRADE-IN | YEAR | MAKE |
|---|---|---|
| MODEL | N/A | N/A |
| | N/A | |

| | | |
|---|---|---|
| Gross agreed upon value of trade-in vehicle ....... | $ | N/A |
| Outstanding prior credit or lease balance on trade-in .. | $ | N/A |
| Net trade-in allowance (if less than 0 , enter -0-) ...... | $ | 0.00 |

THIS BOX IS FOR USE BY LESSOR (DEALER) AND YOU TO MEMORIALIZE TRADE-IN, TURN-IN OR OTHER INDIVIDUALIZED AGREEMENTS. IF NONE, ENTER "NONE" OR "N/A". ASSIGNEE SHALL NOT BE OBLIGATED FOR AGREEMENTS DISCLOSED HERE.

**THIS LEASE IS SUBJECT TO ASSIGNEE APPROVAL**

You have a right to return the vehicle and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.

**THERE IS NO COOLING OFF PERIOD**

California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this lease simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the Lessor or for legal cause, such as fraud.

**Notices/Signatures**

**NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN; (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS LEASE; (3) WARNING - UNLESS A CHARGE IS INCLUDED IN THIS LEASE FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR THAT COVERAGE IS NOT PROVIDED BY THIS LEASE.**

**LESSEE**

By signing below, you acknowledge that:
- This lease is completely filled out;
- You have read this entire lease carefully and agree to all of its terms, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES ON THE BACK OF THIS LEASE;
- You have received a completed copy of this lease; and the Lessor may assign all right, title, and interest in this lease, vehicle and guaranty to anyone.

**GUARANTY**

The Guarantor(s) named below absolutely and unconditionally guarantee(s) payment of all amounts owed under this lease. This means if the lessee(s) fail(s) to pay any money owed, guarantor(s) will pay it. All Guarantor(s) shall be jointly and severally liable and agree that they guaranty shall not be affected by any changes to this lease. Guarantor(s) also agree to be liable for all fees and costs, including attorneys' fees, that the Lessor incurs in enforcing this lease or guaranty.

Guarantor(s) has/have received a completed copy of this lease and guaranty at the time of signing.

| Guarantor | N/A | Guarantor | N/A |
|---|---|---|---|
| Print Name | N/A | Print Name | N/A |
| Address | | Address | |

**LESSOR SIGNATURE AND ASSIGNMENT**

By signing below, the Lessor accepts the terms and conditions of this lease. Lessor assigns all of its title and interest to the lease, vehicle and Guaranty to Daimler Trust, subject to the terms and conditions of Lessor's Agreement with Mercedes-Benz Financial Services USA LLC.

X _(signature)_

NOTICE: SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS OF THIS LEASE.

**ALL TERMS AND CONDITIONS ON THE FRONT AND BACK OF THIS LEASE, INCLUDING THE ARBITRATION DISCLOSURES, ARE A PART OF THIS LEASE.**

**AUTO PAY DEBIT AUTHORIZATION**

Effective on the same date as my lease agreement (the "Agreement"), I (hereafter "I", "me" or "my") hereby authorize Mercedes-Benz Financial Services USA LLC and its successors or assigns ("MBFS") to initiate recurring Electronic Funds Transfers ("EFT") from the account with the financial institution listed below. The amount of each such EFT will be equal to my regularly scheduled payment due under the Agreement. I acknowledge and agree that the amount of my regularly scheduled payment may increase as provided in the Agreement. In the event my regularly scheduled payment due under the Agreement increases by an amount not exceeding $100, I hereby authorize MBFS to increase the amount of the EFT(s) covered by this authorization without providing me notice of such increase. In the event my regularly scheduled payment increases by more than $100, I hereby authorize MBFS to increase the amount of the EFT(s) covered by this authorization after providing me written notice of such increase. I hereby direct the financial institution identified below to honor any such increase in EFT(s) from my account. I represent that the bank account information provided below is for an account located in the United States, and in the event this account is not under my sole ownership, I am authorized to initiate such debit entries from the account. I further agree to provide all banking information requested below, or to deliver a voided check, along with this authorization, down on the financial institution identified below. I understand that any financial information provided herein shall be deemed a part of this authorization. I may cancel this authorization by one of the following methods: (a) sending a written request to MBFS Client Care Center - Auto Pay Department, P.O. Box 685, Roanoke, TX 76262, or by overnight mail to MBFS Client Care Center - Auto Pay Department, 13650 Heritage Parkway, Fort Worth, TX 76177; (b) sending an email requesting cancellation addressed to autopaycare@mbfs.com; (c) sending a cancellation request by facsimile to (800) 283-9123; (d) sending a cancellation request to MBFS.com and canceling as provided in that website; or (e) providing verbal notice of cancellation by calling (800) 654-6222. This authorization will remain in full force and effect until I cancel it by a method listed above. MBFS cancels it in writing, or all Agreement obligations are satisfied. If a payment is due on a bank holiday or a weekend, it will be deducted from my account on the next business day. A payment will be deducted on each scheduled due date.

14-021-5040 CA (04/19)    MBFS - ORIGINAL    CUSTOMER - BLUE    DEALER - YELLOW    FILING - GREEN

Exhibit A
Page 2 of 5

**Operation and Maintenance**

## 17. Maintenance

You agree to maintain, service and repair the vehicle according to the manufacturer's recommendations and any applicable warranty with genuine Mercedes-Benz parts and replacement parts and approved replacement tires. You will keep the vehicle in good operating condition and return the maintenance book with the vehicle. You agree to comply with all vehicle recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, inspection and certification fees, fines, towing, and replacement tires. Lessor will not provide maintenance services unless you agree at your option to buy a separate maintenance agreement.

## 18. Prohibited Uses of Vehicle

You agree not to use or allow anyone else to use the vehicle (a) in a way that violates the law or the terms of your insurance policy or that causes cancellation or suspension of any applicable warranty; and (b) to transport goods or people for pay. You also agree not to take the vehicle outside the United States; however, you may take the vehicle to Canada or Mexico for 30 days or less.

In addition, you agree not to use or allow anyone else to use the vehicle for more than 30 days outside the state where you first registered it or recorded the title unless you first have our written consent.

You will not change or modify the vehicle's body or interior in any way unless you first get our written consent. If you add parts to the vehicle that cannot be removed without harming the vehicle's usefulness or value, you understand that these parts become our property. We may inspect the vehicle at any reasonable time.

You will not assign or sublease any interest in the vehicle or this lease. You will keep the vehicle and lease free from all liens.

You agree that you and anyone else that uses the vehicle are liable for any injury, death, or damage arising out of the use of the motor vehicle, and that we are not liable for any such injury, death or damage.

**Insurance**

## 19. Vehicle Insurance

You agree to provide primary insurance coverage as indicated below during the lease and until the vehicle is returned: (a) liability insurance with limits of not less than $100,000 per person for bodily injury, $300,000 per accident for bodily injury and $50,000 per accident for property damage; (b) collision insurance for the actual value of vehicle and with a deductible no higher than $2,500; (c) comprehensive fire and theft insurance for the actual value of vehicle and with a deductible no higher than $2,500; and (d) uninsured motorist coverage as required by law in the state where the vehicle is registered. You may obtain insurance from anyone of your choice which is reasonably acceptable to us. The insurance policy must name Assignee as additional insured and loss payee and you must provide us with a copy of your policy. If you carry excess or umbrella liability insurance, it will include our interest to the extent provided by law. The policy must require the insurance company to notify us at least 30 days in advance of any changes in coverage or cancellation. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure, or impoundment of the vehicle. For claims arising under your insurance that concern physical damage to the vehicle, you appoint us your attorney-in-fact to make or release the claim. You authorize us to cash or negotiate checks or drafts or other payments received from your insurance company and endorse your name on such items if you are a payee. You also give us a security interest in any money paid under your insurance.

**No physical damage or liability insurance coverage for bodily injury or property damage caused to others is included in this lease.**

## 20. Total Vehicle Loss/Gap Waiver

If the vehicle is subject to a total loss due to collision, destruction or theft, you will pay us the Gap Amount which is the difference between the Early Termination Liability and the insurance proceeds we receive based on the total loss. We agree to waive the Gap Amount if you had the vehicle insurance required by this lease at the time of total loss, in which case you will pay to us the sum of: (a) all unpaid amounts that are due or past due under this lease, plus (b) the amount of your insurance deductible, plus (c) any other amounts that were collected from the vehicle's actual cash value or determine the insurance proceeds we received for the total loss. If this is a Single payment lease, you will receive a refund equal to your lease payment divided by your Lease Term (in shown on the front of this lease) times the number of months left in the lease at the time of the loss of the vehicle. If you do not have insurance on the vehicle or your insurance company denies part or all of your claim, you will be in default and will pay us the early termination liability set forth in section 23.

This subsection will not apply and you will be in default if you accept a cash value settlement from your insurance company without first receiving our consent and forwarding any such settlement to us.

**End of Lease**

## 21. Purchase Option

If you purchase the vehicle at any time, you agree to re-register and re-title the vehicle in your name no later than 30 days from the time you purchase it. If you fail to do so, we reserve the right to cancel the registration.

a. **Scheduled Termination.** At the end of the scheduled Lease Term, you may purchase the vehicle "as is" for the amount set forth in section 8 on the front of this lease.

b. **Before Scheduled Termination.** At any time before the scheduled Lease End, you have an option to purchase the vehicle "as is" for the Early Purchase Option Price described below:

   1) **Standard Lease - Early Purchase Option Price.** If this is a Standard Lease as indicated on the front of the lease, the Early Purchase Option Price is the sum of: (a) any lease payments and other amounts due under the lease at the time of termination; (b) all fees and taxes assessed on or billed in connection with this lease or the vehicle; (c) the Adjusted Lease Balance (explained below); and (d) the Purchase Option Fee provided in section 9 on the front of the lease.

   The Adjusted Lease Balance is calculated by reducing the Adjusted Capitalized Cost each month, on each monthly payment due date, by the difference in the Base monthly payment and the part of the rent charge earned in that month (calculated on a constant yield basis).

   2) **Single Payment Lease - Early Purchase Option Price.** If this is a Single Payment Lease as indicated on the front of the lease, the Early Purchase Option Price is (a) any lease payments and other amounts due under the lease at the time of termination; plus (b) the Purchase Option Fee provided in section 9 on the front of this lease, plus (c) all fees and taxes assessed on or billed in connection with this lease or the vehicle; plus (d) the Residual Value shown on the front of this lease; less (e) the unearned rent charges you paid calculated on a constant yield basis.

## 22. Return of Vehicle

a. **Scheduled Termination.** If this lease is not terminated early and you do not purchase the vehicle, you will, at Lease End: (1) return the vehicle to us at the time and place we specify at your expense, (2) complete and sign odometer statement and, if not already signed, the vehicle condition report, (3) pay the following amounts: (a) any amount owed for excess wear and use (explained in section 22.a.2.); plus (b) all unpaid amounts that are due or past due under this lease, plus (c) the vehicle turn-in fee provided on the front of this lease, plus (d) any official fees and taxes related to the scheduled termination; plus (e) the Mileage Penalty Fee in the amount provided on the front of this lease, if any maintenance locations are not returned with the vehicle. You agree to cooperate in the completion of the condition report, which will be prepared close to or at Lease End. You understand that we may engage a third party to conduct the vehicle inspection and to prepare the condition report.

   1) **Failure to Return Vehicle.** If, at Lease End, you do not return the vehicle to us or you do not exercise your option to purchase the vehicle, you will be in default and you must pay the purchase price in section 9 unless we agree to an extension in writing. If this is a Standard Lease, as indicated on the front of this lease, you will pay an amount equal to your Base Monthly Payment provided on the front of this lease for each month that you retain the vehicle after Lease End, or part thereof, until we receive the purchase price or written extension agreement. If this is a Single Payment Lease, as indicated on the front of this lease, you will pay an amount equal to the Total Single Payment divided by the Lease Term for each month, or part thereof, that you retain the vehicle past Lease End until we receive the purchase price or extension agreement. Our acceptance of any lease payments after Lease End does not give you the right to keep the vehicle and it does not mean that we agree to extend this lease.

   2) **Standards for Excess Wear and Use.** Unless you are charged an Early Return of Vehicle Charge determined by Calculation A or C in section 22.b. of this lease, if you do not purchase the vehicle, you agree to pay for excess wear and use. Excess wear and use includes a charge for any miles driven in excess of the Mileage Allowance and the estimated cost of repair to the vehicle that as the result of excess wear and use, whether or not actually repair the vehicle. In addition to miles driven in excess of your Mileage Allowance, excess wear and use includes, but is not limited to: (a) damage to the major drivetrain components (engine, transmission, differential) not covered by warranty; (b) damage to the exterior (broken or faulty components, dents, body damage, broken or faulty glass, or broken paint); equipment or accessories, including optional factory equipment, keys or remote keyless entry devices, tool box, or anything else that was in or with the vehicle when you received it; (c) missing tires, tires that are below quality than the original tires, tires that are not produced by the same manufacturer; tires of unequal (diameters), tires that have sidewall plugs, cuts or exposed cords, tires that have less than 1/8 inch tread, or wheels that are broken or cracked; (f) damage up the body, fenders, metalwork, lights, trim or paint, including but not limited to dents or rust; (g) damaged or stained seat, floor covers, seats, or any other part of the interior; (h) nonfunctioning, discolored, cracked, or broken glass, including stars, cracks, holes or plugs; (i) failure to maintain the vehicle according to the manufacturer's specifications; (j) other market alterations not installed by an authorized dealer; (k) water damage; (l) damage that makes the vehicle run in a noisy, rough, or improper way, or that makes the vehicle unsafe or unlawful, and (m) any other damage to the interior or exterior that is beyond ordinary wear and tear.

**End of Lease (continued)**

... against you; (H) any business or other business affairs; (7) the vehicle is seized, or levied upon by any government or legal process; (8) the vehicle is destroyed, abandoned, stolen or damaged beyond repair, (9) your driver's license expires or is suspended, revoked, or canceled; or (10) anything else happens that we reasonably believe in good faith endangers the vehicle or your ability to pay.

c. **Remedies for Default.** If you are in default, you will owe your Early Termination Liability provided in section 23.a. and we may take any or all of the following actions: (1) terminate this lease and your rights to the vehicle; (2) take possession of the vehicle without prior demand, without notice or demand is required by law; (3) take reasonable action to prevent the default or our loss; (4) require you to return the vehicle and any related records; (5) make a claim for insurance or service contract benefits or refunds available on your behalf and apply such amount to the amount you owe; or (6) sue any remedy we have at law or in equity. You agree to reimburse us for any amounts we choose to pay under this lease that you are required to pay, including amounts we pay to cover your default or enforce our right to the vehicle. You agree that in the event we hire an attorney to collect any amount due or enforce any right or remedy under this Lease, you shall pay our attorney fees and court costs.

If we take possession of the vehicle as provided in section 23.c.2, we may take any personal property in the vehicle. We will hold the personal property for you for 20 days. If you do not pick up the property within that time, we may dispose of it in any manner.

## 24. Interest on Unpaid Amounts

You understand and agree that upon termination of this lease for any reason, if you do not pay us any amount you owe us upon our demand, you will owe us, in addition to the amount unpaid, interest on such amount at the annual rate of 6% (or such lesser maximum rate as applicable law permits).

**Additional Information**

## 25. Assignment and True Lease

You understand that this is a true lease and that you do not have equity or other ownership rights in the vehicle unless you purchase it from us. You may not assign, sell, sublease or arrange an assumption of your interests or rights under this lease or in the vehicle without our written permission. You understand that we may assign our rights and obligations under this lease at anytime or to anyone, including Daimler Trust, without first notifying you. You agree and grant us permission to provide information about you, the vehicle or this lease to our affiliates at any time, subject to the terms of the Assignee's Privacy Policy. Lessor and its employees are not agents of Assignee and have no authority to obligate Assignee. Mercedes-Benz Financial Services USA LLC ("MBFS"), as the servicing agent for Daimler Trust, has the power to act on Daimler Trust's behalf to administer, enforce and defend this lease. You agree to pay all amounts due under this lease to MBFS or as otherwise directed by MBFS.

## 26. Late Charges/Returned Payment and Other Fees/Fines and Tickets

If we do not receive the entire amount of your Monthly Payment within 10 days after it is due, you will pay us a late fee of $10 or 5% of the unpaid amount whichever is less. If any check, draft, order, or other payment instrument is returned to us for any reason, or if any authorized electronic debit is not paid, you will pay us a fee of $25. You agree to pay all fees and tickets imposed on the vehicle or its driver. If you do not pay such fines or tickets and we pay, you will reimburse us, and pay us an administration fee of $25 to the extent permitted by law. Unless prohibited by applicable law, you agree to pay a processing fee in connection with any payment you make to us by authorizing us, or a bill payment service, orally or in writing, to write a check on your behalf, use automated clearing house procedures, or use any other commercially accepted practice to make your payment from your checking or other account. The amount of the processing fee will be the amount you agree to, orally or otherwise, at the time you authorize us or the bill payment service to process your payment.

## 27. Indemnification

You will defend, indemnify and hold harmless Lessor and Assignee from and against any loss and all losses or damages to the vehicle and from all claims, losses, suits, actions, liabilities, costs and expenses (including, but not limited to reasonable attorney fees) related to and/or against the use, operation or condition of the vehicle.

## 28. Notices/General

We will send notices and correspondence to you at the billing address you provided on this lease. If this address is not the garage address changes, you will inform us, in writing, within 30 days of the change. **To the extent permitted by law, you give us permission to monitor and record any telephone conversation between you and us.** Section headings in this lease are for convenience of reference only and are not part of the lease for any other purpose.

As part of a like-kind exchange program, the Assignee has engaged MBF Account Services LLC as a qualified intermediary. Dealer is hereby notified that the Assignee has assigned to MBF Account Services LLC its rights (but not its obligations) in the agreement for the purchase of this vehicle.

In the event the Lessee purchases the vehicle, Lessee is hereby notified that the Assignee has assigned to MBF Account Services LLC its rights (but not its obligations) in the agreement for the sale of this vehicle.

## 29. Refundable Security Deposit

The Refundable Security Deposit may be used to pay all amounts that you fail to pay under this lease or to satisfy any remedy for Default. Any portion of the Refundable Security Deposit not applied to amounts that you owe will be returned to you after termination of this lease and our determination that the amounts you owed at the end of this lease have been paid. Even if we have refunded to you all or any portion of the Security Deposit, you are still responsible for amounts due and owing after termination of this lease such as personal property tax. You may not apply any portion of the Security Deposit to a Monthly Payment. You will not earn interest on the Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Security Deposit will neither be paid to you nor applied to reduce your obligations under this lease.

## 30. Modification

Any change to this lease must be in writing and signed by Assignee, however, if permitted by law, extension, deferral or due date changes may be agreed to orally by you and Assignee and we will send you written confirmation.

## 31. Enforceability

Each person who signs this lease is jointly and severally liable under this lease and for all payments, whether or not we try to collect from the other signers. We do not have to require the vehicle to exercise any rights against the other signers. We do not give up any of our rights by delaying or failing to exercise them. This lease is subject to the laws of the state where it was signed. This lease is the entire agreement between you and us and is binding on anyone who assumes our interest in it. We are not bound by any statements or representations made by agents or sales people if not contained in this lease. We make no promises regarding any tax benefits to you from leasing. Unless otherwise provided in this lease, if we waive any provision of this lease or if any provision in this lease is held to be unenforceable, void, illegal or otherwise against applicable law, the other provisions shall survive and be enforceable separately from any voided provisions, unless otherwise provided in this lease.

## 32. Delivery

You accept delivery of the vehicle described in this lease and acknowledge that it is equipped as described, is in good operating order and condition, and has the odometer reading recorded on the front of this lease in the Vehicle Information section.

## 33. Payment Obligations

You may not change or stop any lease payments for any reason, even if you do not receive an invoice, and even if the vehicle is stolen, destroyed, seized by the government or a court, experiences mechanical problems, or does not satisfactorily perform. If you experience mechanical or other difficulties with the vehicle, you will pursue these issues with the manufacturer.

## 34. Taxes, Registration and Titling

You agree to title, register and license the vehicle in the state in which it is primarily located. You are aware that the vehicle is to be titled in our name. You must request any power of attorney required from us to title, register, or license the vehicle. You agree to promptly pay all title, registration, license, inspection, testing, personal property tax and other taxes, fees, and charges imposed by government authorities in connection with the vehicle, the lease, or any amounts due or payable arising from this lease. We may pay any of all license, title and registration costs, fees, charges and taxes relating to the vehicle or this lease that you do not pay and you agree to reimburse us for such amounts. We have no duty to account to you for the fees, charges, or taxes we pay. You are responsible for any fines, penalties, and/or interest if you do not pay a bill when it is due. If the vehicle is primarily located in a state other than a state that bills you directly for personal property tax, we will invoice you for personal property tax, if applicable, after we have been billed by the taxing authority. During the term of this lease, you agree to pay the invoice amount on or before your next Monthly Payment due date, subject to any applicable sales tax. If this is a Standard Lease, or within 10 days of being invoiced if this is a Single Payment Lease. If the vehicle is primarily located in a state that bills you directly for personal property tax, you will pay the state DIRECTLY for the personal property tax owed on the vehicle. If you do not pay and we pay the personal property tax, you will reimburse us the cost of the personal property tax and any penalties incurred.

## 35. Security Interest

You grant us a security interest, to the extent permitted by law, in the following, to secure performance of your lease obligations (1) proceeds of any insurance with respect to the vehicle; (2) proceeds of any service contracts purchased with this lease; and (3) any unearned premiums or refunds of any of the foregoing. You will not allow any lien or encumbrance to attach to the vehicle.

If this is a standard lease as indicated on the front of this lease, Daimler Trust grants a security interest in the vehicle to Daimler Title Co., as collateral agent, pursuant to the Collateral Agency Agreement dated as of August 1, 2007, as amended

Exhibit A

Page 3 of 5

## 22. Return of Vehicle

**a. Scheduled Termination.** If the lease is not terminated early and you do not purchase the vehicle, you will, at Lease End: (1) return the vehicle to us at the time and place we specify at your expense, (2) complete and sign odometer statement and, if not already signed, the vehicle condition report, (3) pay the following amounts: (a) any amount owed for excess wear and use (explained in section 22 a 2); plus (b) all unpaid amounts that are due or past due under this lease; plus (c) the vehicle turn-in fee provided on the front of this lease; plus (d) any official fees and taxes related to the scheduled termination; plus (e) the Missing Records Fee in the amount provided on the front of this lease, if any maintenance booklets are not returned with the vehicle. You agree to cooperate in the completion of the condition report, which will be prepared close to or at Lease End. You understand that we may engage a third party to conduct the vehicle inspection and to prepare the condition report.

**1) Failure to Return Vehicle.** If, at Lease End, you do not return the vehicle to us or you do not exercise your option to purchase the vehicle, you will be in default and you must pay the purchase price in section 9 unless we agree to an extension in writing. If this is a Standard Lease, as indicated on the front of this lease, you will pay an amount equal to your Total Monthly Payment provided on the front of this lease for each month that you retain the vehicle after Lease End, or part thereof, until we receive the purchase price or written extension agreement. If this is a Single Payment Lease, as indicated on the front of this lease, you will pay an amount equal to the Total Single Payment divided by the Lease Term for each month, or part thereof, that you retain the vehicle past Lease End until we receive the purchase price or extension agreement. Our acceptance of any lease payment after Lease End does not give you the right to keep the vehicle and it does not mean that we agree to extend this lease.

**2) Standards for Excess Wear and Use.** Unless you are charged an Early Return of Vehicle Charge determined by Calculation A or C in section 22 b, of this lease, if you do not purchase the vehicle, you agree to pay for excess wear and use. Excess wear and use includes a charge for any miles driven in excess of the Mileage Allowance and the estimated cost of repairs to the vehicle that are the result of excess wear and use, whether or not we actually repair the vehicle. In addition to miles driven in excess of your Mileage Allowance, excess wear and use includes, but is not limited to: (a) damage to the major driveline components (engine, transmission, differential) not covered by warranty, (b) damage to the electrical system or battery, (c) damage to the frame, (d) missing or broken parts, equipment or accessories, including optional factory equipment, keys or remote keyless entry devices, tool kits, or anything else that was in or on the vehicle when you received it, (e) missing tires, tires that are lower quality than the original tires, tires that are not produced by the same manufacturer, tires of unequal size (diameter), tires that have sidewall plugs, cuts or exposed cords, tires that have less than 1/8 inch tread, or wheels that are broken or cracked, (f) damage to the body, fenders, metalwork, lights, trim or paint, including but not limited to dents or rust, (g) damaged or stained dash, floor covers, seats, or any other part of the interior, (h) malfunctioning, disturbed, cracked, or broken glass, including stars, cracks, holes or chips, (i) failure to maintain the vehicle according to the manufacturer's specifications, (j) after market alterations not installed by an authorized dealer, (k) water damage, (l) damage that makes the vehicle run in a noisy, rough, or improper way, or that makes the vehicle unsafe or unlawful, and (m) any other damage to the interior or exterior that is beyond ordinary wear and use.

**b. Early Termination by You.** If you are not in default and you do not purchase the vehicle, you may terminate this lease at any time. If you terminate your lease before the Lease End, you must return the vehicle to us and pay your Early Return of Vehicle Charge described below.

**1) Standard Lease - Early Return of Vehicle Charge.** If this is a Standard Lease, as indicated on the front of this lease, your Early Return of Vehicle Charge is determined by Calculation A or Calculation B, below, whichever is less:

**Calculation A:** (1) All unpaid Monthly Payments that have accrued up to the date of termination; plus (2) All other unpaid amounts that are due under this lease; plus (3) The Vehicle Turn-In Fee; plus (4) Any amount determined by subtracting the Adjusted Lease Balance from the Fair Market Wholesale Value from the Adjusted Lease Balance. If the Fair Market Wholesale Value exceeds the Adjusted Lease Balance, the excess will be applied as a credit toward your liability. You will not receive a refund for any remaining excess.

**Calculation B:** (1) All unpaid amounts that are under the lease, other than excess wear and use and mileage charges (including, but not limited to, all official fees and taxes related to the lease or the vehicle in connection with lease termination); plus (2) The Vehicle Turn-In Fee; plus (3) Any amount determined by subtracting the vehicle's Fair Market Wholesale Value from the Adjusted Lease Value; less (4) An unearned rent charges that you paid, calculated on a constant yield basis. If the Fair Market Wholesale Value exceeds the Residual Value, the excess will be applied as a credit toward your liability. You will not receive a refund for any remaining excess.

**Calculation C:** (1) All unpaid amounts due under the lease (including, but not limited to, all official fees and taxes related to the lease or the vehicle in connection with lease termination); plus (2) The Vehicle Turn-In Fee; plus (3) The amount, if any, by which your excess mileage charge for excess mileage.

**2) Fair Market Wholesale Value.** The Fair Market Wholesale Value will be determined in one of the following ways: (a) within 3 days of the scheduled date of disposition, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the vehicle which could be realized at sale. The appraised value shall be final and binding and then used as the Fair Market Wholesale Value; (b) the amount paid for the vehicle upon disposing of the vehicle in a commercially reasonable manner; (c) if we retain ownership of the vehicle, the wholesale value of the vehicle as specified in the current edition of a recognized used vehicle value guide customarily used by California motor dealers to value vehicles or (d) if the vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Fair Market Wholesale Value will equal: (i) the amount of any proceeds we receive from your required insurance; plus (ii) the amount of your deductible under such insurance, if that amount has been paid to us. If there are no insurance proceeds under (d) above, the Fair Market Wholesale Value will be zero.

## 23. Default

**a. Early Termination by Us.** We may terminate this lease at anytime if you are in default (see section 23.b.) and you must pay us your Early Termination Liability. Your Early Termination Liability equals all expenses related to recovering, obtaining, storing and preparing for sale and selling the vehicle, including, but not limited to: reasonable attorney fees, collection costs, and court costs, to the extent not prohibited by law; plus, (1) if this is a Standard Lease, the amount determined by Calculation A in section 22.b.; or (2) if this is a Single Payment Lease as indicated on the front of this lease, the amount determined by Calculation C in section 22.b.

**b. Events of Default.** You will be in default if: (1) you fail to make any payment when due, including any amount required to be paid under the sections of this lease entitled RETURN OF VEHICLE, Scheduled Termination or Early Termination by you; (2) you break any promise or conditions in the lease or any other agreement with us; (3) you fail to maintain required insurance or you do anything that invalidates your required insurance; (4) you fail to return the vehicle as we specify; (5) you give false or misleading information to us or your credit application or other document; (6) you die, are declared incompetent, become insolvent, a bankruptcy petition or

## 31.

...provisions, plans, the number of, or the Leased property may limit, hinder, or prohibit the exercise of certain of our rights and remedies upon default. In the event any provision of this lease or any document entered into in connection with this lease are held to be invalid, illegal or unenforceable by a court of competent jurisdiction, you agree that the remaining provisions shall be enforced to the fullest extent permitted by applicable law. We are not bound by any statement or representations made by agents or sales people if not contained in this lease. We make no promises regarding any tax benefits to you from leasing. Unless otherwise provided in this lease, if we waive any provision of this lease or if any provision in this lease is held to be unenforceable, void, illegal or otherwise against applicable law, the other provisions shall survive and be enforceable separately from any voided provisions, unless otherwise provided in this lease.

## 32. Delivery

You accept delivery of the vehicle described in this lease and acknowledge that it is equipped as described, is in good operating order and condition, and has the odometer reading recorded on the front of this lease in the Vehicle Information section

## 33. Payment Obligations

You may not change or stop any lease payments for any reason, even if you do not receive an invoice, and even if the vehicle is stolen, destroyed, seized by the government or a court, experiences mechanical problems, or does not satisfactorily perform. If you experience mechanical or other difficulties with the vehicle, you will pursue these issues with the manufacturer.

## 34. Taxes, Registration and Titling

You agree to title, register and license the vehicle in the state in which it is primarily located. You are aware that the vehicle is to be titled in our name. You must request any power of attorney required from us to title, register, or license the vehicle. You agree to promptly pay all title, registration, license, inspection, testing, personal property taxes, and other fees, taxes and charges imposed by government authorities in connection with the vehicle, this lease, or any amounts due or payable arising from this lease. You may pay any or all license, title and registration costs, fees, charges and taxes relating to the vehicle or this lease that you do not pay and you agree to reimburse us for all amounts. We have no duty to account to you for the fees, charges, or taxes we pay. You are responsible for any fines, penalties, and/or interest if you do not pay a bill when it is due. If the vehicle is primarily located in a state other than a state that bills you directly for personal property tax, we will invoice you for personal property tax. If applicable, after we have been billed by the taxing authority. During the term of this lease, you agree to pay the invoice amount on or before any next Monthly Payment due date. We may receive some bills after this lease has ended. If this lease has ended, you agree to pay us within 10 days of being invoiced. If this is a Standard Lease, or within 10 days of being invoiced if this is a Single Payment Lease. If the vehicle is primarily located in a state that bills you directly for personal property taxes, you will pay the state DIRECTLY for the personal property tax owed on the vehicle. If you do not pay, and we pay the personal property tax, you will reimburse us the cost of the personal property tax and any penalties incurred.

## 35. Security Interest

You grant us a security interest, to the extent permitted by law, in the following, to secure performance of your lease obligations: (1) proceeds of any insurance with respect to the vehicle; (2) proceeds of any service contract purchased with the lease; and (3) any unearned premiums or refunds of any of the foregoing. You will not allow any lien or encumbrance to attach to the vehicle.

If this is a standard lease as indicated on the front of this lease, Daimler Trust grants a security interest in the vehicle to Daimler Title Co., as collateral agent, pursuant to the Collateral Agency Agreement dated as of August 1, 2007, as amended.

## 36. Power of Attorney

You appoint us, to the extent permitted by law, through our appointed officer or employee, as your attorney-in-fact to act on your behalf in any insurance/coverage matter relating to the vehicle, including, but not limited to, the power to endorse insurance/coverage proceeds checks or drafts on your behalf, and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other national insurance/coverage financed under this lease, and apply the refunded premium or cost to your outstanding balance if you are in default. You grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations you owe under this lease are paid in full.

---

## Important Arbitration Disclosures

## 37. Arbitration

The following Arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.

1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court.

2. If such dispute is arbitrated, you and we will give up the right to a trial by a court or a jury trial.

3. You agree to give up any right you may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and you agree to give up any right you may have to consolidate your arbitration with the arbitration of others.

4. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit.

5. Other rights that you and/or we would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this lease, Arbitration section or the arbitrability of any issue), between you and us or any of our employees, agents, successors or assigns, which arises out of or relates to a credit application, this lease, or any resulting transaction or relationship arising out of this lease shall, at the election of either you or us, or our successors or assigns, be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. Whoever first demands arbitration may choose to proceed under the applicable rules of and be administered by the National Center for Dispute Settlement, 43239 Garfield Road, Suite 130, Clinton Township, MI 48038 or the internet at http://www.ncdsusa.org/, or any other organization that you may choose subject to our approval.

Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. Unless the rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. If you demand arbitration first, you will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125, and we will pay any additional initial filing fee or case management fee. We will pay the whole filing fee or case management fee if we demand arbitration first. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent you from requesting that the applicable arbitration entity reduce or waive your fees, or that we voluntarily pay an additional share of said fees, based upon your financial circumstances or the nature of your claim.

This lease evidences a transaction involving interstate commerce. Any arbitration under this lease shall be governed by the Federal Arbitration Act (9 USC 1, et seq.). Judgment upon the award rendered may be entered in any court having jurisdiction.

Notwithstanding this provision, both you and Lessor and Lessor's successors and assigns retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbitrator. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

If any clause within this Arbitration section, other than clause 3 or any similar provision dealing with class action, class arbitration or consolidation, is found to be illegal or unenforceable, that clause will be severed from this Arbitration section, and the remainder of this Arbitration section will be given full force and effect. If any part of clause 3 or any similar provision dealing with class action, class arbitration or consolidation is found to be illegal or unenforceable, then this entire Arbitration section will be severed and the remaining provisions of this lease shall be given full force and effect as if the Arbitration section of this lease had not been included in this lease.

---

## VEHICLE LOCATION CONSENT

**For Mercedes-Benz Vehicles:** Notwithstanding anything in the Mercedes-Benz mbrace® Subscriber Services Agreement (the "Subscriber Agreement") or any other similar agreement or document provided or made available to you in connection with your identified vehicle, the vehicle and provided by applicable law, if you are in default (as defined herein) and your vehicle has a data recorder or the capability to report the vehicle's location through your use of the mbrace® services or otherwise, you consent and authorize us and our agents, representatives, and affiliates including Mercedes-Benz USA, LLC ("MBUSA") and any service provider acting with it or on its behalf, including ATX Group, Inc. ("ATX") and Verizon Telematics, Inc. ("VTI"), to (a) obtain data from the vehicle by means of the vehicle including the location of the vehicle, (b) receive the data to us, MBUSA, ATX, VTI or their agents, representatives, and affiliates and (c) use such data for the purpose of locating the vehicle, including, without limitation, for the repossession of it. You agree that notwithstanding anything to the contrary in the Subscriber Agreement, MBUSA and/or any of its agents, representatives, and affiliates (including but not limited to ATX and VTI) are intended to be protected by the consent you are giving in this document, and that those parties are (i) third party beneficiaries of this consent, (ii) entitled to rely upon and enforce this consent, and (iii) protected and held harmless by you against any liability for such use of any data. You also agree that your consent will supersede any past or future wording of notice by any other Subscriber Agreement, allowing you to request that certain information removed from your vehicle's sensing or diagnostic modules not be used (or any other comparable actions of the Subscriber Agreement) and that your consent shall be fully enforceable and effective notwithstanding your sending any such notice, or exercising any such right.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, you, on behalf of you, your successors and your assigns, intentionally, knowingly and irrevocably hereby release and discharge us and our affiliates, officers, directors, managers, members, owners, shareholders, employees, attorneys, agents, representatives, predecessors, successors, assigns and whatever acting by, through, under or in concert with them (the "Releasees") including, without limitation, MBUSA and any service provider acting on MBUSA's behalf, from all claims, liabilities, obligations, damages, losses, costs, expenses, debts, liens, suits, actions and of any kind of nature, whether known or unknown, whether now existing or hereafter arising, whether in tort, contract or strict liability or otherwise and however caused, and any form of damage whatsoever, whether or unforeseen, suspected or unsuspected, contingent or fixed, direct or indirect, which have existed or may have existed, or which now exist or may exist in any way based upon or related to the subject matter of this document. The includes, in the case of MBUSA, ATX, VTI and anyone acting with them, any claim based on an allegation that activities to locate or repossess your vehicle as contrary to herein covenant the subscriber without you being in default. Your represent, warrant and covenant not to sue, or commence an arbitration or other proceeding against, any of the Releasees, to enforce any charge, claim or cause of action released herein.

You knowingly and intentionally waive and release any and all rights or claims to assert in connection with the subject matter of this document against us and our agents, representatives, and affiliates including, without limitation, MBUSA and any service provider acting on or with MBUSA's behalf including but not limited to ATX, VTI, their successors and anyone acting with them, including but not limited to any rights created under the Subscriber Agreement that the applicable law (including without limitation protection laws). In addition, you knowingly and intentionally waive and release any and all provisions, rights, and benefits conferred by section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,

and any law of any state or territory of the United States, or principals of common law, which is similar, comparable or equivalent to section 1542 of the California Civil Code.

BA-001-60440 CA (08/16)

Mercedes-Benz

Mercedes-Benz
Financial Services

06/01/2018

FARSHAD HARANDI
26060 PACIFIC COAST HWY 3
MAIBU, CA 90265

RE:  Due Date Change Confirmation
     Account Number: ████████1001

Dear  FARSHAD HARANDI:

Based on your verbal authorization and our receipt of the due date change fee of ____$0.00____, we have processed your request for a due date change under the First Class Lease Agreement dated __06/24/2017__ ("Lease").

This letter serves as confirmation that the due date has been changed from the __24__ to the __1__. Your next payment is due on __07/01/2018__.

The terms and conditions of the Lease remain in full force and effect except as modified herein. Please

read this document carefully. If you have any questions, please contact us at __(800) 654-6222__.

Regards,

Client Services Department
Mercedes-Benz Financial Services

**PLEASE RETAIN THIS CONFIRMATION FOR YOUR RECORDS - (Attach to your Lease Agreement)**

Exhibit _A_
Page _5_ of _5_

Mercedes-Benz Financial Services USA LLC, authorized servicer for Daimler Trust.

84-001-2059

Mercedes-Benz – are registered trademarks of Daimler AG, Stuttgart, Germany

Mercedes-Benz Financial Services USA LLC
A Daimler Company
P.O. Box 685
Roanoke, TX  76262-0685
Phone: (800) 654-6222
www.mbfs.com

# Exhibit "B"

TO PROPERLY RELEASE YOUR LIABILITY
SECTIONS A-J MUST BE COMPLETED IN ...

PLEASE READ AND FOLLOW INSTRUCTIONS ON ...SE SIDE
PRINT IN CAPITAL LETTERS – USE BLACK OR ...UE INK

## NOTICE OF TRANSFER AND RELEASE OF LIABILITY

*MAIL THIS PORTION TO DMV-OR-FILE ONLINE AT dmv.ca.gov*

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME            FIRST

B. NEW OWNER'S ADDRESS            APT NUMBER            C. ODOMETER READING (NO TENTHS)

D. CITY            STATE            ZIP CODE            E. DATE OF SALE OR LEASE RETURN
MO.    DAY    YR

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME            FIRST            G. SELLING PRICE (NO CENTS)
WHOLE
DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS            APT NUMBER            I. SELLER'S OR LESSEE'S SIGNATURE
X

J. CITY            STATE            ZIP CODE

VEHICLE ID NUMBER            YR. MODEL    MAKE            PLATE NUMBER

4JGDF6EE4HA942951            2017 MERZ            7ZDN423

REG. 138A (REV 10/2012)

---

## STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

AND170706BA

VEHICLE HISTORY

AUTOMOBILE

VEHICLE ID NUMBER            YR MODEL  MAKE            PLATE NUMBER
4JGDF6EE4HA942951            2017 MERZ            7ZDN423

BODY TYPE MODEL    AX UNLADEN WEIGHT    FUEL    TRANSFER DATE    FEES PAID            REGISTRATION EXPIRATION DATE
UT            G            NONE            06/26/2018

YR 1ST SOLD    CLASS    YR    MO    EQUIPMT/TRUST NUMBER            ISSUE DATE
2017 VB            YU            07/06/17

MOTORCYCLE ENGINE NUMBER            ODOMETER DATE    ODOMETER READING
06/24/2017            60 MI
ACTUAL MILEAGE

REGISTERED OWNER(S)
DAIMLER TRUST LSR
HARANDI FARSHAD LSE
26060 PACIFIC COAST HWY
3
MALIBU CA 90265            - - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a _____    X _____
DATE            SIGNATURE OF REGISTERED OWNER

1b _____    X _____
DATE            SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [_____] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

WARNING    ☐ Odometer reading is not the actual mileage.    ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE    TRANSFEREE/SELLER SIGNATURE(S)            DATE    TRANSFEREE/BUYER SIGNATURE(S)
X            X

PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY            PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

DAIMLER TITLE CO
PO BX 997545
SACRAMENTO CA 95899

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

CA174540285

027831            REG. 17.30RS (REV.02/2016)

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.    VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

KEEP IN A SAFE PLACE - VOID IF ALTERED

Exhibit B
Page 1 of 3

**IMPORTANT NOTICE — DO NOT DETACH**

COMPLETE THIS FORM ONLINE AT dmv.ca.gov
AND PRINT A RECEIPT FOR YOUR RECORDS.
IF YOU MAIL THIS FORM, KEEP A COPY FOR YOUR RECORDS.

You are required by law to notify the Department of Motor Vehicles within five (5) days from the date you sell or otherwise dispose of a vehicle. This form is provided for use in reporting the sale or transfer to the Department, and does not constitute application for transfer of ownership (title). **This form is to be used <u>ONLY</u> for the vehicle described on the attached title.**

When this form is properly completed and the information is recorded by DMV (see WARNING below), liability for parking and/or traffic violations and civil litigation resulting from operation after the date of sale becomes the responsibility of the subsequent purchaser(s).

**WARNING: If you provide incomplete, inaccurate or unclear information, the information shall not be updated or retained.**

TO REMOVE YOUR NAME FROM DMV'S RECORDS, THE NEW OWNER MUST APPLY FOR TRANSFER USING THE ENDORSED CERTIFICATE OF TITLE (OWNERSHIP) RECEIVED FROM YOU.

**INSTRUCTIONS FOR COMPLETING
NOTICE OF TRANSFER AND
RELEASE OF LIABILITY**

(A) Print name of new owner.
(B) Print new owner's address.
(C) Enter odometer reading at the time of sale (motor vehicles only).
(D) Print new owner's city, state. and ZIP code.
(E) Enter date you sold or transferred the described vehicle.
(F) Print your name.
(G) Enter selling price (in whole dollars-no cents). If vehicle is a gift, enter "0".
(H) Print your address.
(I) Sign your name where designated.
(J) Print your city, state and ZIP code.

FILE ONLINE, OR MAIL THIS COMPLETED NOTICE TO:

DEPARTMENT OF MOTOR VEHICLES
P.O. BOX 942859
SACRAMENTO, CA 94259-0001

---

### APPLICATION FOR TRANSFER BY NEW OWNER    *(Please print or type.)*

Any change of registered owner or lienholder must be recorded with the Department of Motor Vehicles (DMV) within ten (10) days. The title, transfer fee and in most instances, use tax and a smog certificate must be presented to DMV to record the ownership change.

**NEW REGISTERED OWNER**

3a. TRUE FULL NAME(S) OF NEW REGISTERED OWNER(S) *(LAST, FIRST, MIDDLE)* AS IT APPEARS ON DRIVER'S LICENSE OR I.D. CARD

3b. ☐ AND  ☐ OR    *(LAST, FIRST, MIDDLE)*

4. RESIDENCE OR BUSINESS STREET ADDRESS    APT./SP./STE. NUMBER

5. CITY    STATE    ZIP CODE

6. COUNTY OF RESIDENCE OR COUNTY WHERE VEHICLE IS PRIMARILY GARAGED-OR-FOR TRAILER COACHES, ADDRESS OR LOCATION WHERE KEPT

7. MAILING ADDRESS STREET OR P.O. BOX NUMBER (DO NOT COMPLETE IF SAME AS RESIDENCE ABOVE)

8. CITY    STATE    ZIP CODE

If there is a mailing address entered on this form it is a valid, existing and accurate address. I consent to receive service of process at this mailing address pursuant to Code of Civil Procedure Sections 415.20(b), 415.30(a) and 416.90.
I declare under penalty of perjury under the laws of the State of California that the information entered on this application is true and correct.

9a. DATE | SIGNATURE OF NEW REGISTERED OWNER  X | DRIVER LICENSE OR ID CARD NO. | PURCHASE DATE

9b. DATE | SIGNATURE OF NEW REGISTERED OWNER  X | DRIVER LICENSE OR ID CARD NO. | PURCHASE PRICE OR IF GIFT, SO STATE

**LEASED VEH. ONLY**  10. ADDRESS OF NEW LESSEE IF DIFFERENT FROM LINE 4 ABOVE (WILL NOT BE PRINTED ON TITLE)

**NEW LIENHOLDER**

11. NAME OF LIENHOLDER – FIRM OR INDIVIDUAL HOLDING SECURITY INTEREST (IF NO LIEN, WRITE "NONE") DO NOT ENTER NAME OF REGISTERED OWNER(S) ABOVE ELECTRONIC LIENHOLDER ID    ELT #

12. STREET ADDRESS OR P.O. BOX NUMBER

13. CITY    STATE    ZIP CODE

---

### TITLE REASSIGNMENTS BY LICENSED CALIFORNIA DEALERS

FEDERAL LAW REQUIRES that you state the mileage upon transfer of ownership. Failure to complete or making a false statement may result in fines and / or imprisonment.
The signature below releases my interest in this vehicle, acknowledges the odometer mileage recorded by the seller, and certifies to the odometer reading entered above my signature in compliance with Federal law.

**DEALER TRANSACTIONS ONLY**

14. Odometer now reads: ☐☐☐,☐☐☐ (no tenths) miles, and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked: **WARNING** - Mileage ☐ is not the actual mileage. ☐ exceeds the odometer mechanical limits.    R/S NUMBER
I declare under penalty of perjury under the laws of the State of California that the information entered on this application is true and correct.

DATE | SIGNATURE OF AUTHORIZED AGENT  X | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER

DATE | BUYER'S SIGNATURE, ACKNOWLEDGES ODOMETER READING  X | PRINTED NAME OF BUYER OR AGENT | | SALESPERSON'S NUMBER

SOLD THROUGH AUCTION IF APPLICABLE | DATE OF AUCTION | AUCTION NAME | DEALER NUMBER

15. Odometer now reads: ☐☐☐,☐☐☐ (no tenths) miles, and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked: **WARNING** - Mileage ☐ is not the actual mileage. ☐ exceeds the odometer mechanical limits.    R/S NUMBER
I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE | SIGNATURE OF AUTHORIZED AGENT  X | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER

DATE | BUYER'S SIGNATURE, ACKNOWLEDGES ODOMETER READING  X | PRINTED NAME OF BUYER OR AGENT | | SALESPERSON'S NUMBER

16. Odometer now reads: ☐☐☐,☐☐☐ (no tenths) miles, and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked: **WARNING** - Mileage ☐ is not the actual mileage. ☐ exceeds the odometer mechanical limits.    R/S NUMBER
I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE | SIGNATURE OF AUTHORIZED AGENT  X | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER

DATE | BUYER'S SIGNATURE, ACKNOWLEDGES ODOMETER READING  X | PRINTED NAME OF BUYER OR AGENT | | SALESPERSON'S NUMBER

Exhibit B
Page 2 of 3

# LIMITED POWER OF ATTORNEY

Know all persons by these presents that Daimler Trust (the "Principal") does hereby appoint BK Servicing, LLC and its employees and agents (collectively, the "Agent") to act in its name and place, to the fullest extent which we could act if we were personally present in connection with the transactions described in Section 1 of this Power of Attorney.

Section 1. **Delegation of Power**. The Principal appoints the Agent to act in the Principal's name in the generation, execution, filing of reaffirmation agreements, proofs of claim and other bankruptcy documents that are referred by Principal to Agent. Without limiting the foregoing, Agent is authorized to prepare and mail reaffirmation agreements and proofs of claim on the letterhead of Principal, act in the name of Principal while discussing reaffirmation terms, execute reaffirmation agreements and proofs of claim in the name of Principal, file with the bankruptcy court reaffirmation agreements and proofs of claim in the name of Principal and generate and send litigation packages, including affidavits in the name of Principal.

Section 2. **Term**. This power of attorney shall become effective on the date the Principal signs this instrument and shall expire and be of no further force and effect after terminated in writing by Principal. The expiration of this power of attorney at the end of the specified term shall not affect the validity of any action taken by the Agent pursuant to this power while this power of attorney was in effect.

In witness whereof, the Principal has executed this instrument this 18 day of March, 2015.

Daimler Trust

By: _____

Title: Sr. Man. Client Services

**Notary**

State of Texas          )
                        ) s.s.
County of Tarrant       )

At Mercedes-Benz Financial Services, LLC, in said County and State, personally appeared

Gerhard G. Gross _____ of Mercedes-Benz Financial Services, who is known to me or was otherwise suitably identified, did acknowledge to me that the execution of this Power of Attorney was his/her free act and deed.

_____
Notary Public

Print Name Jennifer Montiel

Commission Expires: 7-22-18

JENNIFER MONTIEL
Notary Public, State of Texas
My Commission Expires
August 22, 2018

# Exhibit "C"



4/7/2020

**NADA Used Cars/Trucks**

## Vehicle Information

| Vehicle: | **2017 Mercedes-Benz GLS Class Utility 4D GLS450 AWD 3.0L V6 Turbo** |
|---|---|
| Region: | **California** |
| Period: | **April 7, 2020** |
| VIN: | **4JGDF6EE4HA942951** |
| Mileage: | **47,500** |
| Base MSRP: | **$68,890** |
| Typically Equipped MSRP: | **$80,025** |
| Weight: | **5,335** |



## NADA Used Cars/Trucks Values

| Auction* | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Low | N/A | N/A | N/A | **N/A** |
| Average | N/A | N/A | N/A | **N/A** |
| High | N/A | N/A | N/A | **N/A** |
| Trade-In | | | | |
| Rough | $28,650 | N/A | N/A | **$28,650** |
| Average | $30,975 | N/A | N/A | **$30,975** |
| Clean | $32,925 | N/A | N/A | **$32,925** |
| Clean Loan | $29,650 | N/A | N/A | **$29,650** |
| Clean Retail | $38,400 | N/A | N/A | **$38,400** |

*The auction values displayed include typical equipment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

Exhibit C

Page 1 of 1

NADA Used Car Guide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report.
NADA Used Car Guide and its logo are registered trademarks of National Automobile Dealers Association, used under license by J.D. Power.
©2020 J.D.Power

# Exhibit "D"



## Payment History

FARSHAD HARANDI

### Payments Applied Towards Current and Future Invoices

| Payment Received Date | Payment Received Amount | Payment Method | Invoice Number | Invoice Due Date | Invoice Charge Type | Payment Applied | Comments |
|---|---|---|---|---|---|---|---|
| 06/24/2017 | $1,033.26 | Paid Via Dealer | 51447490 | 06/24/2017 | Lease Rental | $1,033.26 | |
| 07/24/2017 | $1,038.01 | ACH Auto Pay | 51890983 | 07/24/2017 | Lease Rental | $1,038.01 | |
| 08/24/2017 | $1,038.01 | ACH Auto Pay | 53938698 | 08/24/2017 | Lease Rental | $1,038.01 | |
| 09/24/2017 | $1,038.01 | ACH Auto Pay | 57234263 | 09/24/2017 | Lease Rental | $1,038.01 | |
| 10/04/2017 | $1,040.38 | Internal On-Line Payment | 60645925 | 10/24/2017 | Lease Rental | $1,040.38 | |
| 11/24/2017 | $1,040.38 | ACH Auto Pay | 62490022 | 11/24/2017 | Lease Rental | $1,040.38 | |
| 12/24/2017 | $1,040.38 | ACH Auto Pay | 64298922 | 12/24/2017 | Lease Rental | $1,040.38 | |
| 01/24/2018 | $1,040.38 | ACH Auto Pay | 66235072 | 01/24/2018 | Lease Rental | $1,040.38 | |
| 02/24/2018 | $1,040.38 | ACH Auto Pay | 67665824 | 02/24/2018 | Lease Rental | $1,040.38 | |
| 03/24/2018 | $1,040.38 | ACH Auto Pay | 69143183 | 03/24/2018 | Lease Rental | $1,040.38 | |
| 04/24/2018 | $0.00 | ACH Auto Pay | 70631108 | 04/24/2018 | Lease Rental | $1,040.38 | |
| | | | | | Lease Rental | ($1,040.38) | Returned Item |
| 05/01/2018 | $1,040.38 | Internal On-Line Payment | 70631108 | 04/24/2018 | Lease Rental | $1,040.38 | |
| 05/24/2018 | $0.00 | ACH Auto Pay | 72470621 | 05/24/2018 | Lease Rental | $1,040.38 | |
| | | | | | Lease Rental | ($1,040.38) | Returned Item |
| 06/01/2018 | $1,040.38 | Internal On-Line Payment | 72470621 | 05/24/2018 | Lease Rental | $1,040.38 | |
| 07/01/2018 | $1,095.14 | Internal On-Line Payment | 71829628 | 04/26/2018 | NSF (Returned Item) - Fee | $27.38 | |
| | | | 74272560 | 05/29/2018 | NSF (Returned Item) - Fee | $27.38 | |
| | | | 75106143 | 07/01/2018 | Lease Rental | $1,040.38 | |
| 08/02/2018 | $0.00 | Internal On-Line Payment | 76756953 | 08/01/2018 | Lease Rental | $1,040.38 | |
| | | | | | Lease Rental | ($1,040.38) | Returned Item |
| 08/11/2018 | $1,040.38 | Internal On-Line | 76756953 | 08/01/2018 | Lease Rental | $1,040.38 | |

** The highlighted amount in the Payment Applied column above represents payments received by creditor that have not been applied to customer's account as of the date this payment history is provided. The highlighted amount may be applied to customer's future invoice(s). If there is any discrepancy in this payment history and creditor's records or if this payment history contains errors regarding customer's payment history, the balances on creditor's books shall prevail. **

Exhibit D
Page 1 of 2

Page 1



## Payment History

| Payment Received Date | Payment Received Amount | Payment Method | Invoice Number | Invoice Due Date | Invoice Charge Type | Payment Applied | Comments |
|---|---|---|---|---|---|---|---|
| | | Payment | | | | | |
| 08/12/2018 | $0.00 | | 78389096 | 08/12/2018 | Late Payment Fee | $50.00 | |
| | | | 78435562 | 08/12/2018 | Late Payment Fee | ($50.00) | Courtesy |
| 08/31/2018 | $1,065.38 | Internal On-Line Payment | 78116102 | 08/07/2018 | NSF (Returned Item) - Fee | $25.00 | |
| | | | 78389085 | 09/01/2018 | Lease Rental | $1,040.38 | |
| 10/02/2018 | $1,040.38 | Internal On-Line Payment | 79879140 | 10/01/2018 | Lease Rental | $1,040.38 | |
| 11/01/2018 | $1,040.38 | Internal On-Line Payment | 81571603 | 11/01/2018 | Lease Rental | $1,040.38 | |
| 12/03/2018 | $1,040.38 | Internal On-Line Payment | 83637913 | 12/01/2018 | Lease Rental | $1,040.38 | |
| 01/01/2019 | $1,040.38 | Internal On-Line Payment | 85089580 | 01/01/2019 | Lease Rental | $1,040.38 | |
| 01/30/2019 | $1,040.38 | Internal On-Line Payment | 86488480 | 02/01/2019 | Lease Rental | $1,040.38 | |
| 03/04/2019 | $1,040.38 | Internal On-Line Payment | 87782044 | 03/01/2019 | Lease Rental | $1,040.38 | |
| 06/17/2019 | $3,121.14 | Speedpay Credit/Debit Card | 89228805 | 04/01/2019 | Lease Rental | $1,040.38 | |
| | | | 90604792 | 05/01/2019 | Lease Rental | $1,040.38 | |
| | | | 91979728 | 06/01/2019 | Lease Rental | $1,040.38 | |
| 07/17/2019 | $1,040.38 | Third Party OLP | 93329701 | 07/01/2019 | Lease Rental | $1,040.38 | |
| 08/06/2019 | $1,040.38 | Third Party OLP | 94721522 | 08/01/2019 | Lease Rental | $1,040.38 | |
| 09/11/2019 | $1,040.38 | Third Party OLP | 96375124 | 09/01/2019 | Lease Rental | $1,040.38 | |
| 10/08/2019 | $1,040.38 | Third Party OLP | 98007226 | 10/01/2019 | Lease Rental | $1,040.38 | |
| 11/13/2019 | $1,040.38 | Third Party OLP | 99625720 | 11/01/2019 | Lease Rental | $1,040.38 | |
| 01/08/2020 | $1,040.38 | Third Party OLP | 101306200 | 12/01/2019 | Lease Rental | $1,040.38 | |
| 03/04/2020 | $1,040.38 | Third Party OLP | 103065003 | 01/01/2020 | Lease Rental | $1,040.38 | |

** The highlighted amount in the Payment Applied column above represents payments received by creditor that have not been applied to customer's account as of the date this payment history is provided. The highlighted amount may be applied to customer's future invoice(s). If there is any discrepancy in this payment history and creditor's records or if this payment history contains errors regarding customer's payment history, the balances on creditor's books shall prevail. **



Page 2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

535 Anton Blvd., 10th Floor, Costa Mesa, CA  92626

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _4/17/20_ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David A. Tilem, Attorney for Debtor:        davidtilem@tilemlaw.com
U.S. Trustee (ND):                        ustpregion16.nd.ecf@usdoj.gov
Brian D. Fittipaldi, Attorney for U.S. Trustee:    brian.fittipaldi@usdoj.gov
David Seror, Chapter 11 Trustee:            aquijano@bg.law        ☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _4/17/20_ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor:                          Attorney for Debtor:            U.S. Bankruptcy Judge:
Farshad Fasihi Harandi            David A. Tilem, Esq.            Honorable Theodor Albert
26060 Pacific Coast Highway        Law Offices of David A. Tilem    U.S. Bankruptcy Court
Malibu, CA 90265                  206 N. Jackson St., Ste. 201    255 E. Temple Street, Suite 1634
                                 Glendale, CA 91206            Los Angeles, CA 90012
                                                            ☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_4/17/20_          Dalin Suon
Date               Printed Name                              Signature

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 12                          F 4001-1.RFS.PP.MOTION

# ADDITIONAL SERVICE INFORMATION
## In re Farshad Fasihi Harandi
Bankruptcy Case No.: 9:19-bk-10449-DS

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**
   - Elizabeth Ann Harandi, elizabethharandi@aol.com
   - Brandon Winston, brandonjwinston@gmail.com
   - Nancy L. Lee, bknotice@mccarthyholthus.com
   - Amid Bahadori, atb@bahadorilaw.com
   - Merdauf Jafarnia, bknotice@mccarthyholthus.com

2. **SERVED BY UNITED STATES MAIL:**

### List of Creditors Holding 20 Largest Unsecured Claims

Pouneh Harandy
429 18th Street
Santa Monica, CA 90402

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Credit One Bank, NA
6801 South Cimarron Road
Las Vegas, NV 89119

Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812

Capital One Bank
4851 Cox Road
Glen Allen, VA 23060

Gerald Powell
Hacienda Pinilla
Provincia de Guanacaste
Playa Avellana, Costa Rica

Freedom Road Financial
Evergreen Bank Group
1515 West 22nd Street, Ste. 100W
Oak Brook, IL 60523

- Debtor only listed the above creditors on the list of Creditors Holding 20 Largest Unsecured Claims.